UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAQUAN GOODE,<br>      Plaintiff<br><br>      v.<br><br>CITY OF CHICAGO *et al.*,<br>      Defendants | No. 25 CV 7410<br><br>Judge Jeremy C. Daniel |

**ORDER**

The defendants' motion to dismiss [24], [31] is granted as to Count VI and denied in all other respects. The defendants shall answer the complaint by December 12, 2025.

**STATEMENT**

**Background**

This matter is before the Court on the defendants' motion to dismiss the complaint. (R. 24; R. 31.)[1] The following facts are taken from the complaint and presumed true for purposes of the pending motion. *Barwin v. Village of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022). On July 1, 2023, plaintiff Daquan Goode went to a park with his family. (R. 1 ¶¶ 7–8.) While there, he noticed a "large number of police," including defendants Officers Gerardo Garcia, Joseph Biszewski, and Thomas Durkin. (*See id.* ¶ 9.) The plaintiff approached the defendants to ask what was happening. (*Id.* ¶ 10.) The defendants seized the plaintiff and forced him to the ground, holding him down with their knees. (*Id.* ¶¶ 11–13.) While in custody, the plaintiff "collapsed" onto his side several times; he also had difficulty breathing and vomited. (*Id.* ¶¶ 17–23.) The defendants transported the plaintiff to the police station, after which he "was rushed" to the hospital. (*Id.* ¶¶ 24–25.)

At some point, the defendants searched the park and recovered a firearm. (*Id.* ¶ 26.) Another person at the park had fled as the defendants arrived, leaving a cell phone, wallet, and the firearm. (*Id.* ¶ 27.) The plaintiff was charged and later indicted with being an armed habitual criminal and resisting or obstructing a peace officer. (*Id.* ¶¶ 28–30.) He was detained in the Cook County Jail pending trial. (*Id.* ¶ 31.)

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

The plaintiff filed the present action on July 1, 2025, alleging four counts against the individual defendants: malicious prosecution under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments (Count I), excessive force under § 1983 and the Fourth Amendment (Count II), false arrest under § 1983 and the Fourth and Fourteenth Amendments (Count III), and denial of medical care under § 1983 and the Fourth, Eighth, and Fourteenth Amendments (Count IV). (R. 1 ¶¶ 34–54.) The complaint also includes an indemnification claim against defendant the City of Chicago ("City") under 745 ILCS 10/9-102 (Count V), a state law intentional infliction of emotional distress (IIED) claim against all defendants (Count VI), and a state law malicious prosecution claim against all defendants (Count VII).[2] (*Id.* ¶¶ 55–66.) The defendants move to dismiss the complaint in its entirety. (*See generally* R. 31.)

## Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a complaint need only contain factual allegations that, accepted as true, sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a Rule 12(b)(6) motion to dismiss, the Court "must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). The Court does not extend this presumption to "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citation modified).

## Analysis

### Materials Extrinsic to the Complaint

In support of their motion, the defendants submit several exhibits consisting of officers' body-worn-camera (BWC) footage, (R. 26; R. 27; R. 32; R. 33), and court records from the plaintiff's prior criminal convictions, (R. 24-5; R. 24-6). They argue that the Court should consider these exhibits in ruling on their motion to dismiss. (R. 31 at 13.) "The [C]ourt . . . may examine exhibits, including video exhibits, attached to the complaint, or referenced in the pleading if they are central to the claim." *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). The Court may also take judicial notice of public records, but only of facts that are "not subject to reasonable dispute." *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018).

---

[2] The complaint appears to mistakenly refer to the state law malicious prosecution claim as "COUNT VIII" even though the complaint contains only seven counts. For clarity, the Court refers to the state law malicious prosecution claim as "Count VII."

The Court may consider the records of the plaintiff's prior criminal convictions, which are public records. *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994) ("The district court properly considered the public court documents in deciding the defendants' motions to dismiss . . . ."). The Court will not, however, consider the BWC footage. Even if the footage flatly contradicts the plaintiff's allegations as the defendants argue, it is neither referenced in nor central to the complaint. The defendants principally argue that this case is similar to *Avitia v. City of Chicago*, where this Court agreed to consider BWC footage at the motion to dismiss stage. No. 23 C 15957, 2024 WL 2274101 (N.D. Ill. May 20, 2024). There, the Court relied in part on the fact that the complaint "reference[d] conversations that the officers had outside of [the plaintiff's] presence that were captured by the footage." *Id.* at *4. However, the Court found it "[i]mportant[]" that the plaintiff "d[id] not object to the authenticity of the BWC footage, nor d[id] he object to the Court considering it." *Id.* Although the plaintiff here likewise does not affirmatively contest the BWC's authenticity, he does object to the Court considering it at this stage. (R. 34 at 5–6.)

This case is more similar to this Court's prior decision in *Robinson v. Crot*, which also involved BWC footage. No. 23 C 14805, 2024 WL 1603485 (N.D. Ill. Apr. 12, 2024). In *Robinson*, like here, "the footage [was] not mentioned in [the plaintiff's] complaint, even in passing." *Id.* at *2. The Court also rejected the argument that the footage was central to the complaint because it captured the entirety of the incident, *id.*, an argument the defendants raise here, (R. 31 at 13–14). As the Court explained in *Robinson*, distinguishing several cases the defendants rely on here, the plaintiff "could have brought [his] § 1983 case if the BWC [footage] never existed." *Robinson*, No. 23 C 14805, 2024 WL 1603485, at *1–*2 (discussing *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012), and *Hyung Seok Koh v. Graf*, No. 11 C 2605, 2013 WL 5348326 (N.D. Ill. Sept. 24, 2013)). While the BWC footage may "provide[] key insights into the allegedly unreasonable events that took place," its existence is not itself dispositive, meaning it is not central to the complaint. *Id.*

Finally, the Court does not agree that the BWC footage's supposed tendency to "utterly discredit" the complaint's allegations is a standalone reason to consider the footage. The "utterly discredit" standard is meant to resolve factual issues where a non-moving party is entitled to have the record's facts construed in its favor. *See Esco*, 107 F.4th at 679 ("[A] district court deciding a motion to dismiss[] may not defy the Supreme Court's command to accept all facts in the complaint as true, and instead rely on video evidence unless the video 'utterly discredit[s]' the non-movant's version of the facts such that there could be no reasonable disagreement about what the video depicts."); *see also Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) ("Although on summary judgment we generally view the facts in the light most favorable to the nonmovant, in rare circumstances when video footage clearly contradicts the nonmovant's claims, we may consider that video footage without favoring the nonmovant."). It is a standard for resolving evidentiary issues in dispositive motions, not a third way for courts to consider materials outside the complaint's four corners.

3

The defendant's citations to contrary decisions by another court in this district do not persuade the Court. *See Johnson v. McDonald*, 23 C 3200, 2025 WL 965703 (N.D. Ill. Mar. 31, 2025); *Luczynski v. Joroan*, 23 C 17184, 2024 WL 3106101 (N.D. Ill. June 24, 2024). As this Court noted in *Robinson*, "if video footage exists that clearly contradicts a plaintiff's story, the more appropriate response is an early and cost-efficient motion for summary judgment." *Robinson*, No. 23 C 14805, 2024 WL 1603485, at *2 (citation modified).

**False Arrest (Count III) & Malicious Prosecution (Counts I & VII)**

The defendants argue that the plaintiff's false arrest and malicious prosecution claims fail because probable cause existed to arrest the plaintiff. (R. 31 at 14.) Lack of probable cause is an element of both claims. *Mannoia v. Farrow*, 476 F.3d 453, 459 (7th Cir. 2007); *see also Powell v. City of Chicago*, No. 17 C 5156, 2018 WL 1211576, at *10 (N.D. Ill. Mar. 8, 2018) ("[T]he elements of a malicious-prosecution claim under Illinois law are functionally identical to the elements of a Fourth Amendment malicious-prosecution claim."). However, the probable cause required for each claim may differ: "whereas probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, . . . probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007). Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Neita v. City of Chicago*, 148 F.4th 916, 932–33 (7th Cir. 2025) (quoting *Michigan v. DeFilippo*, 443 U.S. 31, 37 (1979)). The focus is on what the officer knew at the time of the alleged constitutional deprivation—for the false arrest claim, the time of the arrest; for the malicious prosecution claim, the time of charging. *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013) (false arrest); *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) (malicious prosecution).

The defendants argue that they had probable cause to arrest and prosecute the plaintiff for unlawful possession of a firearm by a repeat felony offender, 720 ILCS 5/24-1.7(a), and resisting or obstructing a peace officer, 720 ILCS 5/31-1(a).[3] (R. 31 at 15–16.) Much of the defendants' argument depends on the BWC footage, which the Court will not consider. (*See id.* at 16–18.) Setting that argument aside, the

---

[3] The Court's analysis focuses on the firearm-related charges rather than the charge for resisting arrest. "[R]esistance to an unlawful arrest does not automatically defeat a plaintiff's [false arrest] claim." *See Roberson v. Liebermann*, No. 17 C 6156, 2019 WL 4855759, at *3 (N.D. Ill. Oct. 2, 2019) (citing *Abbott v. Sangamon County*, 705 F.3d 706, 720–21 (7th Cir. 2013)). Additionally, as noted above, probable cause for one charge does not defeat a malicious prosecution claim for a separate charge. *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007).

defendants also argue the allegations that the defendants recovered a firearm, that the plaintiff was in the area where the officers retrieved it, and his status as a repeat-offender supported probable cause. (*Id.* at 16–17.) For the false arrest claim, the plaintiff's status as a repeat-offender is not relevant. Reading the complaint in a light most favorable to the plaintiff, it alleges the plaintiff walked over to the defendants, and the defendants immediately seized him. (R. 1 ¶¶ 9–11.) They would not have known at the time that the plaintiff was a repeat-offender. This amounts to little more than the plaintiff's mere presence in the area of a suspected crime, and "mere presence [is] not sufficient to support a finding of probable cause to arrest." *Williams v. City of Chicago*, 733 F.3d 749, 756 (7th Cir. 2013).

Based on the complaint, the quantum of evidence did not improve by the charging stage. At that point, the defendants would have known that the plaintiff is a repeat-offender, but that fact does nothing to connect to the plaintiff the specific firearm the defendants recovered. A prior conviction may be relevant to establishing probable cause, but it is not dispositive, especially where there is no other information connecting the individual to the suspected crime. *See United States v. McDuffy*, 636 F.3d 361, 364 (7th Cir. 2011); *cf. United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005) ("Alone, a record check cannot serve to corroborate an informant's account.").

Accordingly, the defendants' motion to dismiss is denied with respect to Counts I, III, and VII.[4]

**Excessive Force (Count II)**

The defendants' argument for dismissing the excessive force claim relies entirely on the BWC footage. (R. 31 at 20–21; R. 40 at 10–12.) Because the Court will not consider the footage, the defendants' motion to dismiss is denied with respect to Count II.[5]

**Denial of Medical Care (Count IV)**

Count IV is a claim that the plaintiff was denied medical care in violation of his rights under the Fourth, Eighth,[6] and Fourteenth Amendments. (R. 1 ¶ 50.) The question is whether the officers' conduct was "objectively reasonable under the circumstances." *Braun v. Village of Palatine*, 56 F.4th 542, 552 (7th Cir. 2022) (quoted source omitted). "The inquiry considers: '(1) whether the officer ha[d] notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested

---

[4] Because the plaintiff's federal claim may move forward, the Court has jurisdiction to hear the plaintiff's state law claims. 28 U.S.C. § 1367(a).

[5] The Court disregards all argument relying on the BWC footage going forward.

[6] The Court notes that only the Fourteenth Amendment, not the Eighth, applies to pre-trial denials of adequate medical care. The Eighth Amendment applies to claims arising out of detention following conviction. Regardless, the two claims are practically identical. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005).

treatment; and (4) police interests, including administrative, penological, or investigative concerns.'" *Id.* (quoting *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011)).

According to the defendants, the complaint fails because it "fails to allege that the delay in medical care caused [the plaintiff] to suffer additional injury or that the length of the alleged delay was unreasonable." (R. 31 at 22.) The plaintiff alleges that he repeatedly fell on his side after the defendants attempted to keep him upright, (R. 1 ¶¶ 17–19), and that he struggled to breathe, vomiting as a result, (*id.* ¶¶ 22–23). Nonetheless, the defendants brought him to the police station before seeking medical attention. (*Id.* ¶ 24.) When the defendants did address the plaintiff's medical needs, they "rushed" him to the hospital. (*Id.* ¶ 25.) This is sufficient to state a claim for denial of needed medical care. Even "[a] delay in treating non-life-threatening but painful conditions may constitute [a constitutional deprivation] if the delay . . . unnecessarily prolonged a[] [detainee]'s pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). It is not true, as the defendants argue, that the delay must have caused the plaintiff additional injury. It is enough that the delay prolonged the plaintiff's condition.

The Court therefore denies the defendants' motion to dismiss with respect to Count IV.

**Qualified Immunity**

The defendants claim that they are entitled to qualified immunity under the doctrine of "arguable probable cause." (R. 31 at 23.) "An officer is . . . entitled to qualified immunity in a false arrest case when a reasonable officer could have mistakenly believed that probable cause existed." *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 655 (7th Cir. 2024) (citation modified). This is referred to as "arguable probable cause," which exists where "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Id.* at 656 (quoting *Fleming v. Livingston County*, 674 F.3d 874, 880 (7th Cir. 2012)).

Under the facts alleged in the complaint, the lack of probable cause was not arguable. Essentially, the plaintiff alleges that the defendants arrested him simply because he was in the same general area as a firearm. It has been well-settled in this circuit for at least fifty years that those facts do not constitute probable cause. *See United States v. Maceyras*, No. 86 C 340, 1986 WL 383, at *2 (N.D. Ill. July 23, 1986) (collecting cases). "To arrest a particular person, the officer must have probable cause to believe that a particular person is committing or has committed an offense." *United States v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017). Given the facts as alleged, which contain no hint of particularized suspicion, the defendants are not entitled to qualified immunity.

**IIED (Count VI)**

Count VI is dismissed because the parties agree it is untimely. (R. 31 at 25–26; R. 34 at 2 n.1.)

**Illinois' Tort Immunity Act**

The defendants argue that the plaintiff's remaining state law claim is barred by Illinois' Tort Immunity Act, 745 ILCS 10 *et seq.* (R. 31 at 26.) The Act provides, "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. The defendants argue the alleged acts were not "willful and wanton" because the officers had probable cause, and "[under] Illinois law, the existence of probable cause for the stop and seizure means that the officers didn't act in a willful and wanton manner." (R. 31 at 26 (quoting *Woods v. Village of Bellwood*, 502 F. Supp. 3d 1297, 1319 (N.D. Ill. 2020)).) As discussed above, the complaint plausibly alleges lack of probable cause. The Court rejects this argument for that reason.

**Indemnification (Count V)**

Finally, the defendants move to dismiss the plaintiff's indemnification claim against the City because the underlying claims against the individual defendants fail. (R. 31 at 27 (citing *Baskins v. Gilmore*, No. 17 C 7566, 2018 WL 4699847, at *12 (N.D. Ill. Sept. 30, 2018) ("An indemnification claim necessarily will be tied to an underlying claim for liability.")).) Because the Court denies the defendants' motion with respect to all but one of the plaintiff's underlying claims, this argument necessarily fails. The Court therefore denies the defendants' motion with respect to Count V.

Date: November 21, 2025

JEREMY C. DANIEL
United States District Judge